If it pleases the Court, my name is Michael Bigelow, and I represent Petitioner Michael Carter. Once we get past the probable fact that no one in this room would have accepted Attorney Clark's representation had there been full disclosure, we get down to the discussion about, probably at least, what difference it makes. And to get to that point, we have to discuss, ever so briefly, some of the facts of the case, mostly having to do with the victim, Teach. Teach was, in fact, the only witness to Carter's, to Petitioner's defense of self-defense. The other witnesses, touted by Clark, trial counsel, do no more than really confirm the obvious. Hanrahan, however you pronounce his name, and I blow it each time I say it, is consistent with actually what Petitioner says. Petitioner got out of the car and went to Teach, and there was a shooting. The Petitioner says, yeah, I shot the guy. The question, though, is, was it in self-defense? Clark, in his very minimal investigation, said that there were independent witnesses who observed the shooting, and yes, that's quite true according to the reports. There was an independent witness who did see that somebody, at least, she couldn't identify him as Carter, but did see the Petitioner face off against, or saw somebody at least face off against the victim. But Clark says that another witness, by the name of that same witness, rather, saw the shooter wearing a bandana. And that's not correct. And that, I think, is at 137, 138 of the excerpts. What Laura did, that particular witness did, is recount a conversation that she had had with two other potential witnesses who had said that they would not testify. Those two witnesses, according to this particular witness, said that the shooter was wearing a bandana. Well, we don't know that. That would be hearsay on hearsay and probably even on hearsay. What difference does that make when Carter admits he was the shooter, shot him? He says he shot him, but he says he shot him in self-defense, Your Honor. What does the bandana have to do with that? Well, the bandana was Clark's justification. The bandana was Clark's justification for pleading Carter guilty without any further investigation or any further work on the case. Because if Carter is wearing a bandana at the time of the shooting, that obviates the self-defense issue. And Clark said in his deposition, when I took his deposition, said quite clearly, I didn't believe the guy. I didn't believe my client. He said it was self-defense. I didn't believe him. I didn't believe him because he was seen wearing a bandana. Well, is he going to be attacking him with a bandana? He's going to be attacking him on his testimony that it was self-defense. If you're wearing a bandana, it's not self-defense. But Clark, I mean Carter rather, denied vehemently that he shot the person with intent to kill, premeditated, that he shot him only in self-defense. But Clark was so monumentally conflicted by all of this because of his relationship with Teach, he was there to protect Teach. When we talk about representation, when we talk about representation, we talk really in terms of formal representation. What we're really doing is we're talking about protecting our client. Even if Clark was not formally retained by Teach, he was clearly protecting Teach. And there's good circumstantial evidence of that when he steps up and he says in open court, in another case that is related to this, that I am here to protect Teach from incriminating himself. So the question is, what information did Clark have about Teach that he could have been? I thought he was representing Teach at the preliminary hearing with respect to what's going on here. He did represent Teach at the preliminary hearing. He stood up and he said, I represent Teach, and I am here to protect his interests. I am to protect him from making statements. Yeah, it was the Fifth Amendment, his Fifth Amendment. The Fifth Amendment. Yeah. So what is the Fifth Amendment or what statements could Teach possibly have misstated earlier down the road? How is he going to incriminate himself when he is the victim and testifying in this preliminary hearing? Obviously, Clark had some information about Teach that he could have used to further Carter's interest in plea negotiations. But, counsel, in order for you to prevail, you have to show that there was an actual conflict, that there was something that there was an adverse effect on the representation. And if there is, I mean, if there is evidence, irrefutable evidence that he was the shooter, how could there have been a conflict such that the outcome of the defense? There are shooters and there are shooters. There are shooters in self-defense and there are shooters who intend to kill. The defense was self-defense. The evidence that Clark had could possibly have been used to negotiate a better opinion. What evidence? What evidence? What is there in the record that shows that there was some evidence he had that could have been used? We can't use speculation and say he must have had some evidence. What is there in the record to show that counsel had evidence that could have been used to induce a more favorable outcome? I have in 30-plus years as a trial lawyer and an appellate lawyer, I hate to do this to the Court, but I have never once seen a lawyer stand up and represent a victim and say I'm here to protect his Fifth Amendment rights. What Fifth Amendment problems could Teach possibly have encountered during that representation during that? The problem is you can't answer that question. That's the problem. If you can't answer that question, then you don't have any evidence that there was something concrete. Circumstantial evidence is sufficient. What is the circumstantial evidence? There was something concrete that I can't get to because of the nature of the attorney-client privilege. The problem is all we want is for this client to be represented by a lawyer who doesn't have any kind of conflict. Now, I will ---- That's not what the law entitles you to. You have to show that there was an actual conflict that adversely impacted the outcome of the case before you're entitled to another attorney. And that's the problem we're having here. You're making the argument that there must have been something, but there is no evidence that there in fact was something that generated an actual conflict. I can represent to the Court, and there is evidence that he was representing someone else. Teach. He was representing Teach. That's not enough. He was representing Teach's interests. I submit to the Court ---- You can't, you can't, if you could show that he obtained some evidence in the course of that representation that could have mitigated the charges or worked to the defense of this client and that he failed to do so because of a conflict, that would be clear. But we don't have that. Or if, or if his conflict, to use that term, his relationship with Teach, his conflict with Teach would have made it impossible or difficult at least to cross-examine Teach. Remember, the only witness to the self-defense is Teach himself. Clark's got to cross-examine Teach. Clark knew something that would imperil Teach's Fifth Amendment rights, or he wouldn't have stood up with him at that preliminary hearing. That, that, whatever it was, whatever it was, would have prevented him, would have prevented Clark from effectively cross-examining Teach had this matter gone to trial. Why is it you say that you can't delve into that because of the attorney-client privilege? I can't get to, I can't get to, I can't get to Clark's relationship, and my time is up. But I can't get to Clark's relationship with Teach because Clark was representing Teach. There's an attorney-client privilege there that I can't, I can't break through. Clark can't testify about his relationship or conversations that he's had with Teach. And I appreciate the question. Could you just tell me, what kind of proceeding was held in the district court? Was this a, did this proceed by summary judgment or what? Findings of fact. There was no evidentiary hearing. No, there was no evidentiary hearing. Thank you, Your Honor. There was no evidentiary hearing. We were permitted to do discovery.   And that's what I'm going to say to you. That's the way I did his deposition, and submitted it on the – it was submitted on the papers. Okay. The court, the lawyer's deposition. Yes, the lawyer's deposition, yes. Okay. Thank you. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the warden. I'd like to clear up something factually and make a brief argument. The preliminary hearing in which defense counsel represented victim Teach was later in time than the criminal proceeding we're talking about here. Defense counsel did not represent Teach in any criminal proceeding until after the Petitioner here had pled guilty and disposition had been entered. Was it the same criminal case? No. It was a different criminal case. Exactly. What's important about that is this Court in Foote v. Del Papa has stated that anything other than joint representation is an open question under Supreme Court precedent. Here, all we have is successive representation. Because it's an open question whether or not successive representation can rise to the level of a conflict of interest under Sullivan, habeas relief is foreclosed for that reason. Even under Ninth Circuit precedent, as Your Honor has recognized, there must be a showing of actual conflict and adverse effect, which I in my brief have explained. And I take it that there was the deposition of the lawyer was taken. That's true. And the lawyer explained why he pled him guilty. Oh, absolutely. Absolutely. Did the lawyer intimate anything about any information he might have had that he had to withhold because of that? That's actually a very good question. We tried to or I tried to get into, well, what did your client tell you about the self-defense? And he said, I talked with my client about the self-defense. And after I talked about him, I didn't think it was a good idea. And here's why. Objection. Attorney-client privilege. I tried to get it out. It was a deposition. He didn't want to go over opposing counsel's objection. And so not only did he state I was trying to get a determinate term instead of an indeterminate term. And that's why I suggested him to plead rational in and of itself. But also after I talked to him in prison, I thought, you know what? This self-defense is specious. He didn't say why because he wouldn't divulge the attorney-client privilege. But it's there in the record. I believe at excerpts of record around 200 or so. I can get the exact page if you'd like. Did he refer to witnesses who testified? He gave a very short synopsis years later after the case about who was going to come and testify and what they would say generally. But, yes, that's all in the deposition as well in the excerpts of record. Unless there are any questions which I'd love to answer, I'd submit it. Thank you. Thank you. The case just argued is submitted for decision. Before we hear the next case, the Court will take a 10-minute recess. All rise.
judges: Hug, Schroeder, Rawlinson